IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
DIVISION

| | |
|---|---|
| In Re: Dickinson of San Antonio, Inc.<br>*Debtor,*<br><br>Tango Delta Financial, Inc.; Cottingham Management Company, LLC; Cottingham Apex Texas Fund, LLC,<br>*Appellants,*<br><br>v.<br><br>John Patrick Lowe, Chapter 7 Trustee for the Bankruptcy Estate of Dickinson of San Antonio, Inc., Dickinson of Austin, Inc., and Dickinson of Tulsa, Inc.,<br>*Appellee*. | Case No. 5:19-CV-01011-XR<br><br>Bankruptcy Case No. 16-52492-RBK<br><br>Adv. Proc. No. 18-05259-RBK |

## **ORDER**

On this date, the Court considered the above-captioned appeal from the United States Bankruptcy Court for the Western District of Texas. The subject of this appeal is the Bankruptcy Court's order granting partial summary judgment and subsequent certification of that order as final. For the reasons stated below, the Bankruptcy Court's order on summary judgment is AFFIRMED in part and VACATED in part, and the certification order is AFFIRMED.

### **BACKGROUND**[1]

Dickinson of San Antonio, Inc. d/b/a Career Point ("Debtor"), formerly a for-profit college for nurses, filed a voluntary petition in bankruptcy in the United States Bankruptcy Court

---

[1] Also pending before the Court is Appellants' Motion to Strike Unsupported Factual Allegations Contained in Appellee's Response Brief (ECF No. 24). Appellants move to strike ten purportedly unsupported allegations in Appellee's brief, all of which are contained in the background section of the Appellee's Statement of Facts. These statements, describing Appellee's version of various arrangements between the parties and ASFG's motivations for undertaking such arrangements, are immaterial and irrelevant to Counts 1, 2, and 3 at issue in the Summary Judgment Order. The Court need not consider these allegations in deciding this appeal, and therefore Appellants' Motion is DISMISSED as moot.

1

for the Western District of Texas on October 31, 2016 (Bankruptcy No. 16-52492-RBK). John Patrick Lowe ("Trustee") was appointed to administer the Debtor's bankruptcy estate ("Bankruptcy Estate"). On October 27, 2018, the Trustee brought suit in the Bankruptcy Court against Tango Delta Financial, Inc. f/k/a American Student Financial Group, Inc. ("ASFG"), Cottingham Management Company, LLC ("Cottingham Management"), and Cottingham Apex Texas Fund, LLC ("Cottingham-Texas"), alleging various causes of action against each entity in a 29-count complaint (Adversary Proceeding No. 18-05259-RBK). The Trustee brought Counts 1, 2, and 3 of the complaint against Cottingham-Texas alone, seeking to enforce a set of Master Promissory Notes ("MPNs" or "Notes") executed by Cottingham-Texas in favor of the Debtor.[2]

Both the Trustee and Cottingham-Texas filed cross-motions for summary judgment as to these three counts.[3] The Bankruptcy Court held a hearing on the motions and ultimately entered summary judgment against Cottingham-Texas on May 1, 2019 (the "Summary Judgment Order"). The Summary Judgment Order found that Cottingham-Texas had defaulted under the terms of the MPNs by failing to make the required payments and thus Cottingham-Texas was liable to the Trustee of the Bankruptcy Estate for $8,236,787.40 plus post-judgment interest. The Summary Judgment Order also found Cottingham-Texas liable for the Trustee's attorneys' fees and costs in the amount of $125,909.05, and further ordered that Cottingham-Texas "shall pay to the Trustee" certain sums if the Trustee engaged in post-judgment discovery to collect on the judgment or if Cottingham-Texas filed for post-judgment or appellate relief. After the

---

[2] There are four MPNs at issue. The first was executed in April 2013 between Cottingham-Texas and the Debtor ("2013 MPN"). ECF No. 2-2 at 54–64 [Designated Record on Appeal, hereinafter "R."] The second was executed in December 2015 between Cottingham-Texas and the Debtor ("2015 MPN"). R. at 66–76. The third and fourth were executed at the same time as the 2015 MPN between Cottingham-Texas and two subsidiaries of the Debtor ("Austin MPN" and "Tulsa MPN"). R. at 78–88, 90–100. For purposes of this Appeal, there are no material differences between the MPNs, and the Court will analyze them together.

[3] Cottingham-Texas also sought summary judgment on Count 4. The Bankruptcy Court's denial of summary judgment on Count 4 is not at issue in this Appeal.

Bankruptcy Court entered its Summary Judgment Order, the Trustee moved for and the Bankruptcy Court granted certification of the Summary Judgment Order as final under Rule 54(b) (the "Certification Order"). ASFG and Cottingham-Texas ("Appellants") now appeal both the Summary Judgment Order and the Certification Order.

## ISSUES ON APPEAL

Appellants assert thirteen issues on appeal:

(1) Did the Bankruptcy Court err in finding that the bankruptcy trustee had standing to sue for the collection of certain promissory notes where, prior to the filing of the bankruptcy petition, the bankruptcy debtor had endorsed, assigned, pledged, conveyed, transferred and delivered to ASFG "all right, title and interest" of the debtor in and to the promissory notes (including physical possession thereof) and all loans made by the debtor to Cottingham-Texas as security for the full performance of all the debtor's obligations to ASFG?

(2) Did the Bankruptcy Court err in finding that the bankruptcy trustee had standing to sue for the collection of certain promissory notes where, prior to the filing of the bankruptcy petition, the bankruptcy debtor had conveyed legal title to the promissory notes to ASFG as security for the full performance of all of the debtor's obligations to ASFG?

(3) Did the Bankruptcy Court err in finding that the bankruptcy trustee was a person who was entitled under California law to enforce certain promissory notes which were not in his possession and which had been previously endorsed, assigned, pledged, conveyed, transferred and delivered to ASFG as security for the repayment of debts?

(4) Did the Bankruptcy Court err in finding that the bankruptcy trustee, as representative of the bankruptcy estate, "is the owner" of certain promissory notes where, prior to the filing of the bankruptcy petition, the bankruptcy debtor had endorsed, assigned, pledged, conveyed, transferred and delivered to ASFG "all right, title and interest" of the debtor in and to the promissory notes (including physical possession thereof) and all loans made by the debtor to Cottingham-Texas as security for the full performance of all of the debtor's obligations to ASFG?

(5) Did the Bankruptcy Court err in finding that the bankruptcy trustee, as representative of the bankruptcy estate, "is the owner" of certain promissory notes that were payable to non-debtor corporate subsidiaries of the bankruptcy debtor and had been endorsed, assigned, pledged, conveyed, transferred and delivered to ASFG as security for the repayment of debts?

3

(6) Did the Bankruptcy Court err in ordering Cottingham-Texas to pay to the Trustee $5,000 if the Trustee engages in post-judgment discovery to collect on the judgment?

(7) Did the Bankruptcy Court err in ordering Cottingham-Texas to pay to the Trustee $5,000 if Cottingham-Texas files a Motion for New Trial or other post-judgment motion?

(8) Did the Bankruptcy Court err in ordering Cottingham-Texas to pay to the Trustee $10,000 if Cottingham-Texas files an appeal to the United States District Court?

(9) Did the Bankruptcy Court err in ordering Cottingham-Texas to pay to the Trustee $10,000 if Cottingham-Texas files an appeal to the Fifth Circuit Court of Appeals?

(10) Did the Bankruptcy Court err in ordering Cottingham-Texas to pay to the Trustee $10,000 if Cottingham-Texas files an appeal to the United States Supreme Court?

(11) Did the Bankruptcy Court err in not providing ASFG adequate protection of its security interest in certain promissory notes and ordering that the bankruptcy trustee may collect the promissory notes notwithstanding that the notes had been previously endorsed, assigned, pledged, conveyed, transferred and delivered to ASFG as security for the repayment of debts?

(12) Did the Bankruptcy Court err in certifying the Order Granting Motion for Partial Summary Judgment (the "Summary Judgment Order") as final?

(13) Did the Bankruptcy Court err in finding that there was no just reason for delay in certifying the Summary Judgment Order as final?

Appellants' Br. 1–3.  Issues 1–5 all have to do with Appellants' contention that the Trustee could not properly seek to enforce the MPNs executed by Cottingham-Texas in the Debtor's favor, because the Debtor had assigned the MPNs to ASFG as security for Debtor's performance of its obligations to ASFG.  Issues 6–10 relate to the Bankruptcy Court's monetary award to the Trustee for potential post-judgment or appellate actions Cottingham-Texas might take.  Issue 11 relates to ASFG's argument that the Bankruptcy Court failed to adequately protect its property

interests.  And Issues 12–13 relate to the Bankruptcy Court's certification of summary judgment on Counts 1, 2, and 3 as final.  This Court will address these topics in turn.

## ANALYSIS

In reviewing a decision of a bankruptcy court on appeal, the district court reviews the bankruptcy court's conclusions of law *de novo*.  The bankruptcy court's findings of fact are reviewed for clear error, and mixed questions of law and fact are reviewed *de novo*.  *In re Nat'l Gypsum Co.*, 208 F.3d 498, 503 (5th Cir. 2000).

### A. The Bankruptcy Court's entry of summary judgment against Cottingham-Texas was proper. (Issues 1–5)

The Bankruptcy Court granted summary judgment in favor of the Trustee on Counts 1, 2, and 3 of the Trustee's First Amended Complaint.  Counts 1, 2, and 3 sought enforcement of a set of MPNs executed by Cottingham-Texas in favor of the Debtor.  Under the terms of the MPNs, California law governs the "validity, construction, performance, breach, and effect" of the MPNs.  R. at 551 (citing Section 7.10 of MPNs, "Governing Law, Jurisdiction and Venue").  Under California law, recovery of a promissory note requires proof of the elements of breach of contract: (1) the existence of a contract and its terms, (2) plaintiff's performance of the contract or excuse for nonperformance, (3) the defendant's breach, and (4) resulting damage to the plaintiff.  *See Student Loan Mktg. Ass'n v. Hanes*, 181 F.R.D. 629, 633 (S.D. Cal. 1998).

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  Courts in the Fifth Circuit have recognized that "[s]uits on promissory notes are particularly suited for disposition by summary judgment."  *Fed. Sav. & Loan Ins. v. Atkinson-Smith*, 729 F. Supp. 1130, 1132 (N.D. Tex. 1989) (citing *FDIC v. Cardinal Oil Well Servicing*

*Co., Inc.*, 837 F.2d 1369, 1371 (5th Cir. 1988)). Such is the case here, where the parties do not dispute the material facts underlying Cottingham-Texas' liability on the MPNs.

### *1. The Trustee met its summary judgment burden on Counts 1, 2, and 3.*

The Trustee presented summary judgment evidence of the elements of breach of contract, which Cottingham-Texas does not dispute. R. at 122–24. The existence and terms of the contracts are evident from the attachment of the relevant MPNs, executed by Cottingham-Texas in favor of the Debtor. *See* R. at 54–64 (2013 MPN), 66–76 (2015 MPN), 78–88 (Austin MPN), 90–100 (Tulsa MPN). It is undisputed that Cottingham-Texas executed the MPNs in favor of the Debtor, agreeing to repay loans from the Debtor according to the terms of the MPNs.

> **MASTER PROMISSORY NOTE**
>
> FOR VALUE RECEIVED, COTTINGHAM APEX TEXAS FUND, LLC, a California limited liability company ("Borrower"), hereby promises to pay to the order of DICKINSON OF SAN ANTONIO, INC., a Kansas corporation, d.b.a Career Point College ("Lender"), in lawful money of the United States of America, all principal sums advanced to Borrower by Lender or any Lender Party under this Master Promissory Note ("Loans" defined below) with interest on the outstanding principal amount of each Loan at the Interest Rate (defined below) in accordance with the terms of this Master Promissory Note ("Note").

*See* R. at 55, 67, 79, 91. The MPNs obligated Cottingham-Texas to make certain payments to the Debtor. *See* R. at 57, 68, 80, 92 (Section 2.1 setting forth that "[e]ach Loan under this Note will be repaid by Borrower [Cottingham-Texas] during an Interest-Only Period immediately followed by a Principal Repayment Period as defined herein.") Cottingham-Texas made some of those payments to the Debtor, but then stopped making payments altogether. R. at 424–26. This failure to pay constitutes default under the terms of the MPNs.

> (a) Borrower fails to make any payment of principal or interest due under the Loan when due and such failure continues uncured for a period of ten (10) days following written notice of such failure given to Borrower according to the notice provisions of this Note;

*See* R. at 59, 70, 82, 94 (Section 4.1(a), describing "Events of Default"). Cottingham-Texas admits that it received written notice of its default from the Trustee, and that despite this notice Cottingham-Texas has not made any payments since the Trustee was appointed. R. at 508 ¶ 83 ("Defendants admit that on or about June 21, 2018, Trustee corresponded with Cottingham-Texas regarding the [MPNs], which correspondence speaks for itself."); R. at 506 ¶ 62 (admitting that "Cottingham-Texas has not made any payments to [Debtor] since the Trustee was appointed.")

Under the MPNs, in the event of default the holder of the MPNs is entitled to accelerate the debt so that the entire unpaid principal balance and all accrued interest becomes immediately due and payable.

> 4.3 **Default and Acceleration**. At the option of the holder of this Note, the entire unpaid principal balance of, and all accrued interest on, a Loan made under this Note shall immediately become due and payable upon the occurrence at any time of any one or more Event of Default.

R. at 71. The Trustee presented evidence that it was damaged by Cottingham-Texas' breach in the amount of $8,236,787.40—the unpaid balance payable to the Debtor at the time of default. R. at 182, 423–26. Cottingham-Texas does not contest any of these material facts.

### 2. *The Bankruptcy Court did not err in allowing the Trustee to enforce the MPNs against Cottingham-Texas.*

Cottingham-Texas does not dispute its own breach of the MPNs, its own default under the MPNs, or the amount due and payable under the MPNs. Instead, Cottingham-Texas (and ASFG)[4] argue that the Trustee cannot properly enforce the MPNs against Cottingham-Texas.

---

[4] Even though Counts 1, 2, and 3 are against Cottingham-Texas alone, ASFG opposed the Trustee's motion for summary judgment and now appeals the same alongside Cottingham-Texas. *See* R. at 901 ("[Appellants] oppose the Trustee's Motion for Partial Summary Judgment on the grounds set forth in Cottingham-Texas' Motion for Summary Judgment.") The Court notes its own confusion as to why ASFG, an apparent creditor to the Bankruptcy Estate, would present the same arguments and be represented by the same counsel as Cottingham-Texas, an apparent

This is because, according to Appellants, the Debtor "endorsed, transferred and assigned" the MPNs to ASFG at the time they were executed; therefore, the Trustee cannot be a "holder" of the MPNs entitled to enforce them and lacks standing to do so. R. at 552–557. The Trustee argues in response that what was assigned to ASFG was a security interest in the MPNs that does not extinguish the Trustee's right to enforce them. The Bankruptcy Court agreed with the Trustee, holding that the Trustee, as representative of the Bankruptcy Estate, properly asserted its claims[5] and that Cottingham-Texas was liable to the Trustee for $8.2-plus million. R. at 1025.

i. The terms of the "assignment" at issue.

The assignment at issue was attached as Schedule G to separate agreements entered into between the Debtor and ASFG ("TLPA/APPA agreements").[6] *See* R. at 654 (Schedule G to the TLPA), 727 (Schedule G to the APPA). Pursuant to the assignment, the Debtor agreed to "endorse, assign, pledge, convey, transfer and deliver to ASFG all right, title and interest of" the Debtor in and to the MPNs "pursuant to the terms of" the MPNs and the TLPA/APPA agreements. *Id.* The assignment was made "as security for the full performance of" Debtor's obligations to ASFG under the TLPA/APPA agreements. *Id.* The assignment also "serve[s] as the written authorization and direction of [the Debtor] to [Cottingham-Texas]…upon demand by

---

debtor to the Bankruptcy Estate. It is equally unclear how Cottingham-Texas could benefit from the argument that it owes $8.2-plus million to ASFG rather than to the Trustee, absent additional agreements between Cottingham-Texas and ASFG that would lead ASFG to not seek to collect on those sums owed and payable under the MPNs.

[5] The Bankruptcy Court held that, as to the 2013 and 2015 Notes, the Trustee was the "owner" of the Notes and as to the Austin and Tulsa Notes, the Trustee "properly asserted" claims "derivatively on behalf of" the respective Debtor's subsidiaries. Although Appellants appear to differentiate between these two, challenging the Bankruptcy Court's determination that the Trustee "is the owner" of Notes payable to the Debtor in Issue 4 versus Notes payable to non-Debtor corporate subsidiaries in Issue 5, Appellants do not present separate arguments that hinge on whether the payee is the Debtor or a subsidiary of the Debtor. The Court, too, will ignore this immaterial distinction.

[6] The Tuition Loan Program Agreement ("TLPA") was entered into between the Debtor and ASFG in April 2013, contemporaneously with the execution of the 2013 MPN. R. at 594. The Account Purchase Program Agreement ("APPA") was entered into between the Debtor and ASFG in December 2015, contemporaneously with the 2015, Austin, and Tulsa MPNs. R. at 674. For the purposes of this Appeal, there are no material differences between the TLPA and APPA.

ASFG as the secured party under the Agreement, to make payment to ASFG of all sums due under this Note and all Loans evidenced by this Note." *Id.*

> **SCHEDULE G**
>
> **ENDORSEMENT, ASSIGNMENT AND PLEDGE OF PROMISSORY NOTE**
>
> DICKINSON OF SAN ANTONIO, INC., a Kansas corporation, d.b.a. Career Point College, and EDUDYNE SYSTEMS, INC., a Missouri corporation (collectively "Lenders"), for value received, and pursuant to the terms of the Tuition Loan Program Agreement dated as of April 25, 2013, among American Student Financial Group, Inc., a Delaware corporation ("ASFG") and Lenders ("the Agreement"), do each hereby endorse, assign, pledge, convey, transfer and deliver to ASFG all right, title and interest of Lenders, and each of them, in and to this Master Promissory Note (including physical possession thereof) and all Loans made by Lenders, or any of them, to Borrower pursuant to the terms of this Note and the Agreement, now existing or at any time in the future, as security for the full performance of all of Lenders' obligations under the Agreement.
>
> This Endorsement, Assignment and Pledge of Promissory Note shall also serve as the written authorization and direction of each of the undersigned to the Borrower hereunder, upon demand by ASFG as the secured party under the Agreement, to make payment to ASFG of all sums due under this Note and all Loans evidenced by this Note until receipt by Borrower of written notice from ASFG that it has received all delinquent sums due and owing to it by Lenders under the Agreement.

The terms of the TLPA/APPA agreements, in turn, provide that the Debtor "pledges, grants and assigns to ASFG a first priority and continuing security interest in, a lien on, and pledge and assignment of the Collateral."

> 11. **Security Interest in Favor of ASFG.**
>     11.1 **Grant of Security Interest.** As consideration for the obligations to be undertaken and performed by ASFG under this Agreement, which Client acknowledges to be of significant value to Client, Client hereby pledges, grants and assigns to ASFG a first priority and continuing security interest in, a lien on, and pledge and assignment of the Collateral (as defined in Section 11.1.2 below). Client represents and warrants to ASFG that such security interest, lien and encumbrance granted is senior in priority to any security interest, lien, claim or encumbrance held by any other party. The security interest granted hereunder is given to and shall be held by ASFG for the sole purpose of providing security for the full satisfaction and performance of all "Client's Obligations" (as defined in Section 11.1.1 below) arising under this Agreement.

R. at 605 (Section 11, "Security Interest in Favor of ASFG" of the TLPA), 692 (same contained in the APPA). "Collateral" is defined as the Debtor's "present and future right, title and interest in and to each and every [loan] made by [Debtor] to [Cottingham-Texas] under the [MPNs]…including the right to possession of the [MPNs themselves] and the right to demand and receive all payments and proceeds due and payable at any time…pursuant to the [MPNs]." R. at 605, 692.

> ii. Debtor assigned to ASFG a security interest in the MPNs that does not affect the Debtor's right to enforce against Cottingham-Texas.

Despite the Appellants' arguments to the contrary, this assignment does not affect the Trustee's entitlement to enforce the MPNs executed by Cottingham-Texas in the Debtor's favor. The Bankruptcy Court concluded that, as a matter of law, the assignment did not extinguish the Trustee's right to enforce the Notes or his standing to do so. This Court agrees.

Appellants' arguments against summary judgment in the Adversary Proceeding were based on their assertion that the Trustee was not a "holder" of the MPNs as defined by California law. But the law cited to by Appellants only applies to negotiable instruments. *See* Cal. Com. Code § 1201(b)(21) (defining "holder" to mean "the person in possession of a negotiable instrument that is payable either to bearer or, to an identified person that is the person in possession"). Once the Trustee pointed out that the MPNs are non-negotiable instruments, Appellants abandoned their arguments premised on Article 3 of the Uniform Commercial Code as codified in California law. Now on appeal, Appellants argue that "[n]on-negotiable written contracts for the payment of money are assignable in the same way that negotiable instruments are assignable." Appellants' Br. 14. The authorities cited by Appellants which stand for the proposition that promissory notes <u>may</u> be fully assigned is "neither disputed nor remarkable," as the Trustee points out. Appellee's Br. 21. But what matters in this Appeal is <u>what actually was assigned</u> by the Debtor to ASFG.

There are three compelling reasons to conclude that the Debtor assigned to ASFG a security interest that did not extinguish the Debtor's ability to enforce the Notes. First, the face of the contracts at issue supports this conclusion. *See* R. at 654 (assigning "all right, title and interest" of Debtor in MPNs "<u>as security</u> for the full performance of [Debtor's] obligations" under the TLPA); R. at 727 (same under the APPA); R. at 605 (TLPA discussing grant to ASFG

10

"a first priority and continuing <u>security interest in, a lien on</u>" Debtor's right, title and interest in MPNs); R. at 692 (same under APPA). The MPNs—which were executed at the same time as the Schedule G assignments—are payable to the order of the Debtor, not to ASFG or to the possessor of the Notes. *See* R. at 55, 67, 79, 91. The contracts also contemplate that there can be more than one "holder" entitled to exercise rights and powers in the MPNs. *See* 61, 72, 84, 96 (Section 7.4 discussing "Rights of Holders" in terms of "[e]very legal holder of this Note"). Second, ASFG—who is now attempting to block the Trustee from enforcing the MPNs, but who has not attempted to enforce the Notes themselves—judicially admitted in the Bankruptcy Proceeding that it has a claim "secured by a <u>lien on</u>…Promissory Notes <u>payable to debtor</u>." R. at 965. Finally, when Cottingham-Texas was performing under the terms of the MPNs before defaulting, it made over $200,000 of payments to the Debtor, not to ASFG. *See* R. at 424–26. The assignment to ASFG did not affect the Debtor's ability to collect payment from Cottingham-Texas then, and it does not affect the Trustee's ability to enforce the Notes against Cottingham-Texas now.

Under California law, "the intention of the parties as manifested in the instrument is controlling" when "determining what rights or interests pass under an assignment." *In re Klein*, No. ADV NC-11-3171-TEC, 2013 WL 5496519, at *6 (B.A.P. 9th Cir. Oct. 3, 2013) (citing *Cambridge Co. v. City of Elsinore*, 57 Cal. App. 245, 249 (Cal. 1922) ("As with contracts generally, the nature of an assignment is determined by ascertaining the intent of the parties.")) Had the parties intended to extinguish the Debtor's rights to receive payments under or to enforce the MPNs, they could have contracted to do so. Under the terms of the MPNs and operative agreements, they did not.

Appellants have failed to raise any convincing reason that the Debtor's grant of a security interest in the MPNs would extinguish the Trustee's right to hold the maker of the MPNs liable for payment to the payee in whose favor the MPNs were made. This Court thus finds the Trustee can properly bring claims to enforce the MPNs against Cottingham-Texas and has standing to do so. The Bankruptcy Court's grant of summary judgment in the Trustee's favor on Counts 1, 2, and 3 is AFFIRMED and the Appellants' appeal of Issues 1–5 is DISMISSED.

### B. *There is no basis for the Bankruptcy Court's imposition of fees on Cottingham-Texas for future post-judgment or appellate actions. (Issues 6–10)*

Appellants also appeal the Bankruptcy Court's award of certain sums conditional on the Trustee engaging in post-judgment discovery to collect on the judgment or on Cottingham-Texas filing for post-judgment or appellate relief. The Summary Judgment Order provided that "Cottingham-Texas shall pay to the Trustee the following sums if any or all of the following actions are taken":

a. $5,000 if the Trustee engages in post-judgment discovery to collect on this judgment;
b. $5,000 if Cottingham-Texas files a Motion for New Trial or other post-judgment motion;
c. $10,000 if Cottingham-Texas files an appeal to the United States District Court;
d. $10,000 if Cottingham-Texas files an appeal to the Fifth Circuit Court of Appeals; and
e. $10,000 if Cottingham-Texas files an appeal to the United States Supreme Court.

R. at 1025–26. Appellants argue that this part of the Summary Judgment Order constitutes monetary penalties on Appellants for exercising their appellate rights, and that such relief was not prayed for in the Trustee's complaint and is beyond the Bankruptcy Court's power to grant. Appellants' Br. 28. The Trustee argues in response that these provisions are part of the

Bankruptcy Court's award of attorneys' fees and that such award was sound. Appellee's Br. at 42–44. This Court agrees with Appellants.

Although courts in the Fifth Circuit sometimes award conditional attorneys' fees, such conditional fees are typically disfavored. *See* W.D. Tex. Local Rule CV-7(j)(1) (contemplating claims for attorney's fees based on supporting documentation of hours worked); 5th Cir. R. 47.8.1 (indicating fees may be awarded for "work done"); *Joe Hand Promotions, Inc. v. Ambiente Bar LLC*, Civil Action No. 7:13–CV–132, 2014 WL 580767, at *3 n.6 (S.D. Tex. Feb. 13, 2014) (denying conditional fees); *Carroll v. Sanderson Farms, Inc.*, Civil Action No. H–10–3108, 2014 WL 549380, at *23 (W.D. Tex. Feb. 11, 2014) (rejecting conditional appellate attorneys' fees); *Watkins v. Input/Output, Inc.*, 531 F. Supp. 2d 777, 786 (S.D. Tex. 2007) (same). When conditional fees are awarded, they must be conditioned upon ultimate success of the party receiving the award, and the awarding court should conduct an analysis on the reasonableness of the fee. *See MidCap Media Fin., LLC v. Pathway Data, Inc.*, 1-15-CV-00060 AWA, 2018 WL 7890668, at *7 (W.D. Tex. Dec. 19, 2019) ("Texas law does allow for an award of appellate attorneys' fees, provided they are conditioned upon ultimate success…."); *Janvey v. Romero*, 3:11-CV-0297-N, 2015 WL 11017950, at *2 (N.D. Tex. Sept. 22, 2015) ("[T]here must be evidence that the conditional appellate fee amount is reasonable.")

Here, the Bankruptcy Court did not condition the award for future post-judgment or appellate fees upon the ultimate success of the Trustee. The Bankruptcy Court also made no findings as to the reasonableness or necessity of such fees, and the Trustee did not present any evidence to justify the amounts of the conditional awards. The Trustee also did not pray for the conditional award of future fees, but only for the award of "the fees and costs incurred in bringing this lawsuit <u>up to the date of Judgment</u>." R. at 121 (emphasis added). Therefore, this

Court finds the Bankruptcy Court's award of conditional fees was inappropriate. The portion of the Summary Judgment Order awarding conditional fees is VACATED. Should the Trustee actually incur post-judgment or appellate fees, the Trustee can bring a motion to recover those fees and proper supporting evidence before the appropriate court.

### C. *Appellants' adequate-protection arguments fail. (Issue 11)*

Appellants also argue that the Summary Judgment Order was in error because it deprived ASFG of its property rights in the MPNs. Appellants' Br. 22–24. This argument provides no basis for reversing the Summary Judgment Order. First, Appellants failed to raise the adequate-protection issue before the Bankruptcy Court, raising it for the first time here on appeal. Appellants have thus waived this argument. *See HCB Fin. Corp. v. Kennedy*, 570 F. App'x 396, 400 (5th Cir. 2014) (argument waived when raised for the first time on appeal of summary judgment).

But even considering this argument on the merits, this Court finds no grounds for reversal. If ASFG has an enforceable security interest in the MPNs or their proceeds, that interest is not affected by the judgment against Cottingham-Texas. *See* Cal. Com. Code § 9315(a)(2) ("A security interest attaches to any identifiable proceeds of collateral.") As the Trustee points out, even upon tender of payment by Cottingham-Texas, the proceeds of the MPNs will be held in trust under the Bankruptcy Court's supervision. If ASFG prevails on its secured claim, the Bankruptcy Court may order the Trustee to make payments to ASFG. This Court finds that the Bankruptcy Court's Summary Judgment Order against Cottingham-Texas did not fail to adequately protect ASFG's property interests. Issue 11 on appeal is therefore DISMISSED.

### D. The Bankruptcy Court did not err in certifying the Summary Judgment Order as final. (Issues 12–13)

Rule 54(b) allows a court to direct entry of a final judgment as to one or more, but fewer than all, claims in an action that presents more than one claim for relief or when multiple parties are involved "only if the court expressly determines that there is no just reason for delay." FED. R. CIV. P. 54(b). A Rule 54(b) certification of a judgment as final is "peculiarly one for the trial judge," and "that assessment merits substantial deference on review." *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 12 (1980).

Appellants raise four arguments for reversing the Certification Order. First, they argue that the Trustee "did not meet the requirements for Rule 54(b) certification" because the Trustee did not show prejudice if the Summary Judgment Order was not certified as final. Appellants' Br. 25. Appellants misread the requirements of Rule 54(b). Although courts may consider whether a potential delay in appeal may prejudice a party, there is no burden on the party seeking certification to establish prejudice. *See* FED. R. CIV. P. 54(b) ("<u>the court</u> may direct entry of a final judgment…only if <u>the court</u> expressly determines that there is no just reason for delay") (emphasis added). Second, Appellants argue that "the issues for appeal may be mooted" as the remainder of the Adversary Proceeding progresses, because if ASFG prevails at trial it will be entitled to foreclose its security interest in the MPNs. Appellants' Br. 26. As discussed above, ASFG's ability to enforce its security interest in the MPNs or their proceeds is not affected by the Summary Judgment Order entered against Cottingham-Texas, and thus provides no reason for delay of the certification of that Order as final.

Next, Appellants argue that there were just reasons for delay: namely, that the judgment in favor of the Trustee is subject to ASFG's security interest. Appellants' Br. 27. The Bankruptcy Court's factual finding that there were no just reasons for delay is reviewed for clear

error. This Court finds none, especially in light of ASFG's continuing ability to argue its entitlement to enforce its security interest in the Bankruptcy Court. Finally, Appellants argue that summary judgment on Counts 1, 2, and 3 should not have been certified as final because these are not the type of "stand-alone" claims to which Rule 54(b) was meant to apply. *Id.* Once again, Appellants read additional requirements into the Rule that do not exist. The Bankruptcy Court met the requirements of Rule 54(b), stating in the Certification Order that it found "no just reason for delay of entering final judgment" as to Counts 1, 2, and 3. R. at 1041. The Certification Order is therefore AFFIRMED, and Appellants' appeal of Issues 12–13 is DISMISSED.

## CONCLUSION

For the reasons stated herein, the Bankruptcy Court's Summary Judgment Order is AFFIRMED in part and VACATED in part. The Order that Cottingham-Texas is liable to the Trustee for Counts 1, 2, and 3 in the amount of $8,236,787.40, plus post-judgment interest, is AFFIRMED. The Order that Cottingham-Texas shall pay certain sums to the Trustee for post-judgment or appellate actions is VACATED. The Certification Order is AFFIRMED.

Additionally, Appellants' Motion to Strike (ECF No. 24) is DISMISSED as moot. *See supra*, n.1.

The Clerk is directed to enter judgment accordingly and CLOSE this case.

It is so ORDERED.

SIGNED this 16th day of January, 2020.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE

16